**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| ROBERT D. EVANS, individually and on behalf of all others similarly situated, | Case No.: |
| Plaintiff, | CLASS ACTION COMPLAINT JURY |
| v. | TRIAL DEMANDED |
| HILLSBOROUGH COUNTY PROPERTY APPRAISER; HILLSBOROUGH COUNTY TAX COLLECTOR; and FLORIDA DEPARTMENT OF REVENUE. | |
| Defendants, | |

     Plaintiffs Robert Evans ("Plaintiff"), individually and on behalf of a Class (defined below) of similarly situated persons, brings this Complaint and alleges the following against the Hillsborough County Property Appraiser; Hillsborough County Tax Collector; and the Florida Department of Revenue. ("Defendants"), based upon personal knowledge as to himself, and on information and belief as to all other matters.

**JURISDICTION AND VENUE**

1.      This is an action *inter alia* for injunctive relief and damages pursuant to 42 U.S.C.§1983 based upon the continuing violations of Plaintiff's and the Class' due process rights under the Fifth and Fourteenth Amendments to the United States Constitution.

2.      Jurisdiction exists pursuant to 28 U.S.C. §1331 and §1343 based on 42 U.S.C. §1983 and questions of federal constitutional law. Supplemental jurisdiction over state law claims exists pursuant to 28 U.S.C. §1367.

3.      Jurisdiction exists pursuant to 42 U.S.C. § 1983. Defendants, while acting under  the color of law, violated constitutional rights of Plaintiff and the Class.

4.      This Court may exercise subject matter jurisdiction over the matters alleged in this complaint pursuant to 28 U.S.C. § 1331, and 42 U.S.C. § 1983.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the Defendants are located in this Federal Court District as are the properties affected by Defendants' practices. This Court may exercise supplemental subject matter jurisdiction over all of Plaintiffs' state law claims under 28 U.S.C. § 1367(a), because each of the state law claims arises out of the same events giving rise to the federal law case or controversy alleged herein.

6.      Venue is proper in the Middle District in that the events and conduct complained of herein all occurred in the Middle District.

## PARTIES

7.      Plaintiff, ROBERT EVANS, is a resident of Hillsborough County, Florida, which  is within the Middle District of Florida, and the owner of homestead real property in Hillsborough County, Florida, and all acts complained herein occurred within the jurisdiction of this Court.

8.      Plaintiff is a citizen of the United States of America and as such is vested with the protection and enumerated rights guaranteed under the United States Constitution.

9.      Plaintiff is a citizen of Florida and entitled to benefits and protections of the Florida statutes.

10.     Defendant, HILLSBOROUGH COUNTY PROPERTY APPRAISER ("Property Appraiser"), is the property appraiser for Hillsborough County, Florida, which is located in the Middle District of Florida, and who is charged with determining the value of all property within the county and with determining the ad valorem tax to be paid on taxable property after taxes have been levied.

11.     Defendant, HILLSBOROUGH COUNTY TAX COLLECTOR ("Tax Collector"), is the county officer charged with the collection of ad valorem taxes levied in Hillsborough County, Florida, which is located in the Middle District of Florida.

12.     Defendant, FLORIDA DEPARTMENT OF REVENUE ("the Department"), is a Florida State agency charged with the general supervisory powers over the assessment and valuation of real property within the State of Florida.

13.     At all times material hereto, Defendant(s) were the duly appointed or hired and acting as agents of Hillsborough County or the State of Florida and acting in their official duty.

## GENERAL ALLEGATIONS

14.     Based on data from the U.S. Census Bureau, there are currently over 343,242 owner- occupied residential properties within Hillsborough County, Florida.

15.     The Property Appraiser is charged with assessing the value of all real property located in Hillsborough County, Florida, and preparing an assessment roll for submission to the Department for approval.

16.     The Hillsborough Tax Collector is charged with collecting the ad valorem taxes as determined by the Property Appraiser.

17.     The Department is charged with approving or disapproving the assessment roll prepared by the Property Appraiser.

18.     Pursuant to section 192.042, Florida Statutes, all real property in Hillsborough County is required to be assessed according to its Just Value (also known as Market Value ) as of January 1 of each year.

19.     The Department has defined "Just Value" as the price at which a property, if offered for sale in the open market, with a reasonable time for the seller to find a purchaser, would transfer for cash or its equivalent, under prevailing market conditions between parties who have knowledge of the uses to which the property may be put, both seeking to maximize their gains and neither being in a position to take advantage of the exigencies of the other.

20.     The Just Value of real property is the starting point for ultimately determining the Assessed Value upon which taxes against said real property are based.

21.     Florida real property owners are afforded certain protections under the Florida Constitution for their owner-occupied residences, i.e. their homestead, which are exempt from certain taxation pursuant to Article. VII, Section 6 of the Florida Constitution.

22.     Among the benefits inhering to Florida property owners utilizing their homestead status is the tax break afforded by article VII, Section 4(d) of the Florida Constitution, popularly known as the "Save Our Homes" amendment ("SOH Amendment").

23.     The SOH Amendment constitutionally restricts the Property Appraiser from increasing the annual Assessed Value on homestead property by more than 3% or the Consumer Price Index ("CPI"), whichever is lower.

24.     The SOH Amendment was enacted for the purpose of encouraging the preservation of homestead property in the face of ever increasing opportunities for real estate development, and rising property values and assessments, and it serves this goal by limiting the annual change in property tax assessments on homestead exempt property.

25.     While the SOH Amendment limits the increases in Assessed Value for homestead property, the provision does nothing for property owners when they sell their homestead properties and use the funds to purchase a new homestead property. In such cases, the property owner would lose the accumulated difference between the Assessed Value and the Market/Just Value upon the sale of their homestead, resulting in a substantial increase in their annual property

taxes, even if the value of their new homestead property was not significantly different than their prior homestead property.

26. Recognizing this inequity, in 2008, Florida voters approved a separate constitutional amendment that permits a homeowner to transfer the benefit accrued under the SOH Amendment to a new homestead property established within two years of abandonment of the prior homestead (i.e. a homeowner purchased a new homestead property within two years of selling his/her prior homestead property). *See* Art. VII, § 4(d)(8), Fla. Const. The 2008 portability amendment allows a homeowner to transfer some, or all, of accrued SOH Amendment benefit to reduce the Assessed Value of a qualifying new homestead.

27. The 2008 amendment was codified in section 193.155, Florida Statutes.

28. The accrued SOH portability benefit is the difference between the Market/Just Value and Assessed Value (as capped by the SOH Amendment).

29. A visual explanation of SOH portability benefit provided by the Property Appraiser is attached as Exhibit "A".

30. Section 193.155, Florida Statutes, and Florida Administrative Code 12D-9.028 provide a homestead property owner the ability to transfer, in whole or in part, the accrued SOH benefits to a new homestead following the abandonment of their current homestead.

31. In order for a homeowner to take full advantage of accrued SOH benefits, the Market/Just Value of the homestead property must be accurate.

32.     Since its enactment in 2008, the Property Appraiser has purposefully and systematically adopted a scheme and practice of undervaluing the Market/Just Value for real property in Hillsborough County by using a "generalized average valuation for the real property" rather than the actual sales price of the property upon a change of ownership.

33.     The phrase "generalized average valuation for the real property" has no legal definition or descriptive methodology.

34.     The phase "general average valuation for the real property" is an industry term used to describe the valuation approach applied per F.S. 193.011 (2) thru (8) where the actual sales price is not available to establish the most accurate Just Value.

35.     This approach typically is used to describe distinguishable geographic market trend in values such as the difference in value escalation from zip code to zip code versus high demand communities compared to those in less desirable locations.

36.     Applying this approach to individual real properties can produce wide variations in estimated Just Value when compared to actual sales prices as no two real properties are identical.

37.     Accrued SOH benefits are considered personal property as they are divisible, transferable, individual in nature, and their value can be accurately calculated.

38.     The implementation of the Property Appraiser's scheme has led to the increase of the county's tax revenues to the detriment of homestead property owners.

39.     The Department has known or should have known of the Property Appraiser's actions, and the Department has been complicit in the Property Appraiser's actions in approving the assessment rolls incorporating this scheme.

40.     The Tax Collector has known or should have known of the Property Appraiser's actions and has participated in the Property Appraiser's scheme through its action in collecting the ad valorem taxes determined by the Property Appraiser.

41.     By adopting this scheme and practice, the Property Appraiser artificially lowers the Just/Market Value of homestead properties to amounts below the sale prices, which in turn lowers the amount of SOH portability benefits to be applied to the new homestead property.

42.     The effect of the Defendants' actions are both material and long lasting. By way of example and depicted in the chart below, an average Florida homeowner, who purchased his property for $300,000 in 2000 and has been in his homestead for 15 years, would see the Assessed Value of the property increase from $300,000 to $350,000 due to the operation of the SOH Amendment which caps annual increases to Assessed Value.

43.     Once established at the time of purchase, the increase in Assessed Value is limited to the Consumer Price Index for each subsequent year or 3%, whichever is lower.  With few exceptions, usually it's the CPI that is applied.

44.     The Assessed Value is not subject to dramatic market increases in Just Value.

45.     Increases in Just Value has no economic impact whatsoever in calculating the homestead property tax obligations for each subsequent year of ownership.

46.     The assessment process then begins with the Assessed. Value as the starting point in calculating the property tax obligations for each subsequent year of ownership.

47.     After 15 years, the property has increased in actual value and the homeowner sells the homestead property for $600,000 in 2016.

48.     On or before January 1 of the year following the sale, 2017, the value of the property is reviewed by the Property Appraiser. Rather than reflecting the homestead's Market/Just Value as $600,000 (i.e. the  actual sale price), the Property Appraiser  records a Market/Just Value based on a generalized average which is  an amount well below $600,000 (ie. $450,000 per the chart) resulting in the loss of  $150,000 of transferrable SOH benefits. See Attached Exhibit "B".

49.     If this property owner utilizes the funds to purchases a new homestead for the same amount as he sold, i.e. $600,000, the monetary impact of Defendants' scheme will be significant and last throughout the time the homeowner owns the new property. As demonstrated in the chart attached

hereto as Exhibit. "B", the failure to properly assess the Just Value will result in a $3,000 additional tax burden to the homeowner resulting from the failure of porting the accurate accrued SOH benefit.

50. By not using the true Market/Just Value of the homestead being established by a third party arms-length sale when there is a change of ownership, but instead substituting a generalized average valuation for homestead properties, the Property Appraiser is violating Hillsborough County and Florida homestead property owners' constitutional rights and cheating them out of hundreds of millions of dollars, which amounts to a taking of their property rights.

51. The Property Appraiser's scheme (generalized average sales price methodology) is furthered by the time frame in which the property owners are notified of the valuation and the short period of the year in which they are permitted to challenge the valuation, often leaving the property owner with no recourse to recoup or challenge the estimated SOH portability benefits.

52. The Property Appraiser sends out a Notice of Proposed Property Taxes ("NPPT") to property owners in mid-August of each year, which sets the Market/Just Value, the Assessed Value and ultimately the Taxable Value, for each property.

53. The assessment rolls for the entire county are typically certified by mid-July of each year.

54. Under section 194.171(2), Florida Statutes (2019), a property owner must bring a lawsuit or file a petition to the Value Adjustment Board challenging

their current year tax assessment within 60 days of the certification of the assessment. This 60-day period would typically expire mid-September depending on the date of certification of the assessment rolls.

55. When a homestead property owner sells their property prior to the issuance of the NPPT, the NPPT is sent to the new property owner, not the prior property owner. The prior property owner would not receive notice of the Property Appraiser's determination as to the updated Market/Just Value of the sold homestead, nor the amount of accrued SOH benefits actually transferred from his or her former property until mid-August of the following year when the Property Appraiser has already transferred ownership. Thus, in many cases, the prior property owners would never have an opportunity to challenge their accrued SOH portability benefits because they would be provided notice of the issue only **after** the time to challenge had already expired, which is typically in mid-September of the prior year, which is a violation of those property owners' right to due process under the U.S. and Florida constitutions.

56. By way of illustration, if a property owner sold their homestead property (Property A) in May 2018 for $600,000, and then used the proceeds to purchase another homestead for $600,000 in December 2018 (Property B), the Property Appraiser would send the 2018 NPPT for Property A to the new property owner who purchased that property in May 2018, as property taxes are assessed in arrears. The original property owner would not receive the NPPT for his prior homestead. Instead, the original property owner would apply to transfer his

accrued SOH portability benefits to Property B to take effect as of January 1, 2019. The Property Appraiser would not send the original property owner a NPPT for Property B, their new homestead, until mid-August 2019 (the following year after the prior homestead was sold). Under the Property Appraiser's current practices, the Market/Just Value of Property A would not be the sale price of $600,000, but rather would be a lower amount such as $450,000 based on a generalized average valuation for the real property. The Property Appraiser then bases the SOH portability benefit on the $450,000 Market/Just value, not the $600,000 sales price, which will result in a substantial reduction in the amount of the SOH portability benefit to be transferred. In this example, they are deprived of $150,000 of transferrable SOH benefits. The first time the original property owner discovers that the Property Appraiser has undervalued the Market/Just Value of Property A and subsequently the amount of SOH benefits transferred, is when owner receives the 2019 NPPT in mid- August 2019. However, at that point, the time to challenge Property Appraiser's valuation would have already expired under the Property Appraiser's current interpretation of Florida law. Thus, the homestead property owner is deprived of their full SOH portability benefits without notice or an opportunity to be heard on the matter.

57. The Just Value, Just/Actual Value or Market/Just Value has no bearing in calculating the property taxes once the homestead is initially granted and the Assessed Value is established. After that point, the Assessed Value is capped,

limited in its annual increases by the SOH Amendment, which in turn becomes the basis for the annual property tax calculations. Therefore, the homestead owner has no reason to challenge calculating their transferrable SOH benefits prior to the sale of their homestead, which at that point they are time barred from challenging the issue and, thus, are denied due process.

58.    The Property Appraiser has furthered the scheme by interpreting section 193.155(8), Florida Statutes, in a manner that allows the determination of the SOH portability benefit based on the estimated Market/Just Value of the homestead property as of January 1 of the year the property is sold rather than the year the homestead exemption is transferred to a new homestead.

59.    In interpreting section 193.155(8) in this matter, the Property Appraiser ensures that homestead property owners will be denied their ability to challenge the Property Appraiser's determination of the Market/Just Value of the prior homestead property.

60.    The Fourteenth Amendment of the United States Constitution guarantees Plaintiff the right to due process.

61.    Defendants, while acting under the color of law, violated Plaintiff's right to due process based upon the Property Appraiser's interpretation of statute 193.155.

**PLAINTIFF'S FACTS**

62.    In September 2000, Plaintiff purchased a townhome located at 920 Harbour Bay Drive Tampa, Florida, as his primary homestead residence.

63.     Mr. Evans applied for a homestead exemption, which was granted and became effective as of January 1, 2001, and this home remained Mr. Evans' homestead until sold in October 2016.

64.     In mid-2016, Mr. Evans was considering selling his townhome, and he was interested in learning about the impact such a sale might have on the benefits he was entitled to under Art. VII, Sec. 4(d)(8)a. of the Florida Constitution.

65.     Mr. Evans was unfamiliar with the concept of portability of the SOH benefits, he called the Property Appraiser's office to inquire about the proper procedure for applying for the transfer of the SOH benefits. Mr. Evans was directed to the Property Appraiser's website for further information.

66.     In mid-August 2016, Mr. Evans received the 2016 NPPT for his townhome, which showed that his Market/Just Value was $491,531.00 and the Assessed Value as $335,341.00. The NPPT stated that the current taxable value is as of January 1, 2016. See Attached Exhibit "C".

67.     On  the NPPT which is the primary informational document regarding the property tax assessment procedure sent to every property owner under  the Explanation of "Property Appraiser Value Information" section, it stated "MARKET (JUST) VALUE  –  The most probable sale price for a property in a competitive, open market involving a willing buyer and a willing seller."

68.     Mr. Evans decided to move forward with selling his townhome. He hired an appraiser and obtained an appraisal report, dated August 29, 2016, that

valued his home at $590,000. This amount was substantially higher than the 2016 Just Value of $491,531 as reported on the 2016 NPPT. See Attached Exhibit "D".

69.    On September 1, 2016, Mr. Evans visited the Property Appraiser's office to inquire as to what steps, if any, he needed to take to ensure that the Market/Just Value of his homestead townhome would accurately reflect its actual present cash value once the SOH portability benefit was transferred.

70.    After presenting the $590,000 appraisal to the Property Appraiser's office, Mr. Evans informed them that the "Just Value" of this homestead was well below the actual present cash value and that this would negatively impact the amount of benefits he would receive under the SOH provisions. Again, Mr. Evans was directed to the Property Appraiser's website, and not informed that under the Property Appraiser's interpretation of Florida Statutes, of the need to timely file a petition to the Value Adjustment Board challenging the Market/Just Value assigned to the original homestead prior to its sale.

71.    On September 19, 2016, Mr. Evans entered into a Residential Purchase and Sale Agreement to sell his homestead townhome for $600,000. The sale was to close on October 14, 2016. On September 19, 2016, the same day that he signed the Residential Purchase and Sale Agreement, Mr. Evans again visited the Property Appraiser's office and expressed his concern that the Market/Just Value of his homestead was well below current market value and would negatively impact the amount of SOH transferrable benefits available to him.

Mr. Evans informed them that he wanted to take whatever necessary steps to ensure that the ultimate actual sales price would be used in calculating the transferrable SOH benefits versus the Market/Just Value reflected on his 2016 NPPT. However, the Property Appraiser staff never offered him an opportunity to speak with a senior representative, nor informed him of the right or necessity to file a petition to the Value Adjustment Board. See Attached Exhibit "E".

72.    On December 7, 2016, Mr. Evans returned to the Property Appraiser and presented his Purchase and Sale Agreement and his closing documents, the recent appraisal, and the 2016 NPPT for both his townhome and his new primary residence located at 7207 Alafia Ridge Road, Riverview, Florida. Mr. Evans again raised his concern about the Market/Just Value and its impact on the SOH transferrable benefits. While at the Property Appraiser's office, Mr. Evans submitted the required application to transfer his SOH benefits to his new homestead which would take effect on January 1, 2017. The Property Appraiser staff informed Mr. Evans that the Property Appraiser would update the Market/Just Value as of January 1, 2017, when the SOH benefit is actually transferred to the new homestead. Based on these representations, Mr. Evans took no further action. See Attached Exhibit "F".

73.    In mid-August 2017, Mr. Evans received the 2017 NPPT for his new homestead located at 7207 Alafia Ridge Road, Riverview, Florida. Contrary to the representations of the Property Appraiser's office, the

actual amount of accrued SOH benefits applicable to portability to the new homestead was based on the 2016 "estimated" Market/Just Value of $491,531 and not the actual 2017 Market/Just Value as of January 1, 2017, which should have been based on the sales price or present cash value of $600.000. See Attached Exhibit "G".

74.   Mr. Evans calculated that the Property Appraiser's failure to reassess the Market/Just Value as of January 1, 2017, will cause him to suffer an annual loss of $2,070.99, in perpetuity.

75.   After bringing this issue to the attention of the Property Appraiser and after several conversations with staff in the Property Appraiser's office, Mr. Evans, for the first time, was told that the Property Appraiser would not correct the amount of the SOH benefits transferred to his new homestead as of January 1, 2017.

76.   In response, Mr. Evans requested an informal conference in writing on September 5,2017, as afforded by section 192.0105(2)(a) Florida Statutes, and he also filed a Petition to the Value Adjustment Board ("VAB") seeking to challenge the SOH benefits applied to his new homestead as of January 1, 2017, well before the September 12, 2017, filing deadline. See Attached Exhibit "H".

77.   The Property Appraiser failed to respond to Mr. Evans' request for an informal conference as required by statute.

78.     On October 19, 2017, a VAB hearing was held. The next day, the VAB representative contacted Mr. Evans and offered to set a new hearing due to the Special Magistrate falling asleep. The second hearing was scheduled for December 4, 2017, before a new Special Magistrate.

79.     The second, Special Magistrate made a recommendation for denial based on her conclusion that Mr. Evans could not challenge the 2016 Market/Just Value of his prior homestead property as the deadline of September 13, 2016 had passed. See Attached Exhibit "I".

80.     This ruling was irrelevant as it did not address the issue before the tribunal, as Mr. Evans was challenging the 2017 tax assessment of his new homestead.

81.     Mr. Evans challenged the recommendation of denial. Based on his challenge, the VAB authorized a third VAB hearing.

82.     February 9, 2018, the third VAB hearing was conducted before a new Special Magistrate. Mr. Evans argued that section 193.155(3)(a) and section 192.042, Florida Statutes, mandate that real property, upon change of ownership, be reassessed to its Market/Just Value as of January 1 each year, and that, in determining the SOH portability benefit, the Property Appraiser was to use the Market/Just Value as determined as of January 1 of the year the transfer of the SOH benefit is actually made.   In this way, the homeowner would obtain the fair and most accurate SOH benefit. See Attached Exhibit "J".

83.     On February 24, 2018, the third Special Magistrate issued a recommendation for denial based on her conclusion that the Property Appraiser could not adjust the Market /Just Value of the prior homestead sold in 2016 for portability purposes, in order to accurately apply the sales price of the prior homestead in adjusting the amount of accrued SOH benefits transferred to the new homestead as requested by Mr. Evans. See Attached Exhibit "K".

## CLASS ACTION ALLEGATIONS

All sellers of homestead properties ("Properties") located in Hillsborough County where the current property taxes are based, in part on a SOH benefit ported from such Properties ("Class").

84.     Plaintiff brings this suit as a class action on behalf of himself and on behalf of all others similarly situated pursuant to Rule 23 (b)(2), (b)(3), and (c)(4) of the Florida Rules of Civil Procedure. Plaintiff seeks certification of a Class as defined below:

85.     Excluded from the Class are officers, directors, and legal representatives of Defendants, and the Judges and Court personnel in this case and any members of their immediate families.

86.     Numerosity: Fed.R.Civ.P. 23(a)(1). The Class Members are so numerous that joinder of all Members is impractical. While the exact number of Class Members is unknown to the Plaintiff at this time, upon information and belief, there are thousands of affected individuals. The exact number is generally ascertainable

by appropriate discovery as the identity of the Class Members is a matter of record maintained by Defendants.

87.     <u>Commonality</u>: Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.   Whether Defendants were obligated to accurately determine the Just/Market Value of homestead properties;

b.   Whether Defendants failed to accurately determine the Just/Market Value of homestead properties by using the generalized average sales price methodology;

c.   Whether Defendants, by using the generalized average sales price methodology, misrepresented the Just/Market value of homestead properties;

d.   Whether Defendants breached their statutory duty under Florida Statutes Section 192.042(1);

e.   Whether Defendants breached their statutory duties under Florida Statutes Section 193.155(8);

f.   Whether Defendants were negligent in using the generalized average sales price methodology in calculating Just/Market Value of homestead properties;

g. Whether Plaintiffs and Class Members are entitled to actual, damages, statutory damages, and/or punitive damages as a result of Defendant's wrongful conduct; and

h. Whether Plaintiffs and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm as a result of the Defendants' conduct.

i. Whether Defendants violated the Class Members constitutional right to due process by the taking of a tangible asset;

j. Whether Defendants violated the Class Members constitutional rights under 42 USCA 1983, 5th amendment to the United States Constitution and 14th amendment to the United States Constitution.

88. <u>Typicality</u>: Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims are typical of those of other Class Members because Plaintiff, like every other Class Member, was the owner of a homestead property with a incorrectly calculated Just/Market Value that subsequently affected the value of the SOH benefit  and the amount of property taxes he currently pays. Plaintiff's claims are typical of those of the other Class Members because, *inter alia*, all Members of the Class were injured through the common misconduct of Defendants. Plaintiff is advancing the same claims and legal theories on behalf of himself and all other Class Members, and there are no defenses that are unique to Plaintiff. Plaintiff's claims and those of Class Members arise from the same operative facts and are based on the same legal theories.

89.     <u>Policies Generally Applicable to the Class</u>: This class action is also
appropriate for certification because Defendants have acted or refused to act
on grounds generally applicable to the Class, thereby requiring the Court's
imposition of uniform relief to ensure compatible standards of conduct toward
the Class Members, and making final injunctive relief appropriate with
respect to the Class as a whole. Defendant's policies challenged herein apply
to and affect Class Members uniformly and Plaintiff's challenge of these
policies hinges on Defendant's conduct with respect to the Class as a whole,
not on facts or law applicable only to Plaintiff.

90.     <u>Adequacy of Representation</u>: Fed. R. Civ. P. 23(a)(4). Plaintiff will fairly and
adequately represent and protect the interests of the Class in that they have no
disabling conflicts of interest that would be antagonistic to those of the other
Members of the Class. Plaintiff seeks no relief that is antagonistic or adverse
to the Members of the Class and the infringement of the rights and the
damages he has suffered are typical of other Class Members. Plaintiff has
retained counsel experienced in complex consumer class actions, litigation,
and Plaintiff intends to prosecute this action vigorously.

91.     <u>Superiority of Class Action</u>: Fed. R. Civ. P. 23(b)(3). The class litigation is an
appropriate method for fair and efficient adjudication of the claims involved.
Class action treatment is superior to all other available methods for the fair
and efficient adjudication of the controversy alleged herein; it will permit a
large number of Class Members to prosecute their common claims in a single

forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against the government like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

92.     The nature of this action and the nature of laws available to Plaintiff and the Class make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and the Class for the wrongs alleged because Defendants would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

93.     The litigation of the claims brought herein is manageable. Defendants' uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be

no significant manageability problems with prosecuting this lawsuit as a class action.

94. Adequate notice can be given to Class Members directly using information maintained in Defendants' records.

95. Defendants have acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

96. Unless a Class-wide injunction is issued, Defendants will continue to act unlawfully as set forth in this Complaint.

97. Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

## COUNT I
## VIOLATION OF THE RIGHT TO DUE PROCESS PRIOR TO THE TAKING OF PROPERTY RIGHTS 42 USC §1983-FIFTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION

98. Plaintiff realleges and incorporates by reference the allegations set forth above in lines 1 through 97 as though fully set forth herein.

99. The Property Appraiser is charged under Florida law with determining the taxes to be assessed in Hillsborough County against real property situated within the County.

100.    Homestead property owners within Hillsborough County, and throughout Florida, have the right to obtain a SOH portability benefit consistent with their full SOH Amendment protections.

101.    The Property Appraiser's actions in undervaluing the Market/Just Value of homestead property impermissibly reduces the SOH portability benefit of homestead property owners.

102.    In adopting an interpretation of section 194.171(2) that would allow the Property Appraiser to set the SOH portability benefit without providing notice to the affected property owner, the Property Appraiser is denying homestead property owners, knowledge and an opportunity to challenge the determination of the Market/Just Value of the prior homestead property.

103.    These actions are blatant violation of property owners' due process rights under the Fifth and Fourteenth Amendments of the U.S. Constitution.

104.    Specifically, the Property Appraiser and his employees and agents are violating Plaintiff's Fifth and Fourteenth Amendment right; that a citizen shall not be deprived of property, without due process of law.

105.    The Property Appraiser and his employees and agents were acting under the color of state law in violating the Plaintiff's rights.

106.    Plaintiff states that the acts of the Property Appraiser and his employees and agents are intentional and that, at minimum, the Property Appraiser is

deliberately indifferent to the likely consequences of his actions in depriving Plaintiff of his property rights without due process.

107.    The Tax Collector and his employees and agents have approved and participated in the Property Appraiser's act of collecting the higher taxes from Plaintiff when he knew or should have known that Plaintiff was not afforded due process and that such taxes were imposed without lawful justification.

108.    The Department and its employees and agents have approved of and participated in the Property Appraiser's scheme; through its action of reviewing and approving the assessment rolls, that included the imputing higher taxes and undervaluing Just Values when they knew or should have known that Plaintiff was not afforded due process and that such taxes were imposed without lawful justification.

109.    As a direct and proximate consequence of these unlawful acts, Plaintiff has suffered and continue to suffer loss of his real property value and damages in the form of higher property taxes. Plaintiff is entitled to compensatory damages, prospective.

110.    Unless this Court imposes an injunction to prohibit Defendants' actions in the future, Plaintiff will continue to suffer harm.

111.    Plaintiff has incurred attorney's fees in bringing this action and is entitled to be compensated for his attorney's fees and costs.

WHEREFORE, Plaintiff respectfully prays that this Court grant him and class members compensatory damages, prospective damages and injunctive relief as well as attorney's fees and costs and such other relief this Court deems just and proper.

**COUNT II**
**DECLARATORY JUDGMENT ACTION UNDER CHAPTER 86,**
**FLORIDA STATUTES VIOLATION OF SECTION 192.042(1),**
**FLORIDA STATUTES AND 42 U.S.C. §1983**

112. Plaintiff realleges and incorporates by reference the allegations set forth above in lines 1 through 97 as though fully set forth herein.

113. The Plaintiff is a citizen of Florida and entitled to benefits and protections of the Florida statutes.

114. The Property Appraiser is charged under Florida law with determining the taxes to be assessed in Hillsborough County against real property situated within the County.

115. Pursuant to section 192.042(1), Florida Statutes, the Property Appraiser has a duty to assess real property at its Market/Just Value as of January 1 of each year.

116. The Property Appraiser and his employees and agents have breached their statutory duty in failing to assess real property at its Market/Just Value.

117. Rather than assessing homestead property at its Market/Just Value, based upon the actual sales price upon a change of ownership, the Property Appraiser and his employees and agents  are using a generalized average sales price methodology to set Market/Just Values that consistently and

systematically undervalue homestead properties below their true Market/Just Values, which is a violation of Florida law.

118.    There is a bona fide, actual, and present controversy between the parties as to the proper methodology for determining the Market/Just Value of homestead property, upon a change of ownership, within the County.

119.    As a direct and proximate consequence of these unlawful acts, Plaintiff has suffered and continue to suffer loss of his real property value and damages in the form of higher property taxes.

120.    As result, Plaintiff requests that this Court declare that:

   a.   The Property Appraiser is required to use the sales price of homesteaded real property in determining Market/Just Value upon a change of ownership.

   b.   The use of a generalized average sales price methodology does not satisfy the requirements of section 194.042(1) as a matter of law.

121.    Additionally, this Court should issue injunctive relief in the form of preventing the Property Appraiser from any further violations of the law regarding its Market/Just Value determinations.

122.    Plaintiff has incurred attorney's fees in bringing this action and is entitled to be compensated for his attorney's fees and costs.

WHEREFORE, Plaintiff respectfully prays that this Court enter a declaration as set forth above and injunctive relief as well as attorney's fees and costs and such other relief this Court deems just and proper.

**COUNT III**
**DECLARATORY JUDGMENT ACTION UNDER CHAPTER 86,**
**FLORIDA STATUTES VIOLATION OF SECTION 193.155(8),**
**FLORIDA STATUTES**

123.    Plaintiff realleges and incorporates by reference the allegations set forth

above in lines 1 through 97 as though fully set forth herein.

124.    The Property Appraiser is charged under Florida law with determining the

taxes to be assessed in Hillsborough County against real property situated

within the County.

125.    Pursuant to section 193.155(8), Florida Statutes, the Property Appraiser

has a duty to assess new homestead property as of January 1 of each year.

126.    Pursuant to section 193.155(8), the Assessed Value of the new

homestead equals the Market/Just Value of the new homestead less the

amount equal to the lessor of $500,000 or the difference between the

Market/Just Value and Assessed Value of the immediate prior

homestead.

127.    Additionally, under 193.155, as to the immediate prior homestead, the

Property Appraiser is required to utilize the Market/Just Value as

determined on January 1 of the year the homestead exemption is

transferred, i.e. the year following the sale and abandonment of the prior

homestead for the new homestead as statute 193.155 was being

misinterpreted and applied by the Property Appraiser.

128.    Plaintiff timely filed the appropriate applications in 2016 to transfer his

accrued SOH benefits from his prior homestead, following the sale and change

of ownership, to his new homestead, effective January 1, 2017, and thus, the Property Appraiser was required to use the actual sales price as the Market/Just Value of his prior homestead as of January 1, 2017, in determining the SOH portability benefits to be transferred to his new homestead property.

129.   The Property Appraiser failed to use the January 1, 2017, actual Market/Just Value of his prior homestead, and instead, the Property Appraiser utilized the estimated Market/Just Value of the prior homestead as determined for January 1, 2016.

130.   There is a bona fide, actual, and present controversy between the parties as to the proper methodology for determining the Assessed Value of Plaintiff's new homestead property.

131.   As a direct and proximate consequence of the Property Appraiser's interpretation of section 193.155, Plaintiff has suffered and continues to suffer damages in the form of higher property taxes.

132.   Plaintiff requests that this Court declare that the Property Appraiser is required to utilize the actual sales price as the Market/Just Value of Plaintiff's prior homestead property as of January 1, 2017, in calculating the accurate amount of accrued SOH benefits transferred to his new homestead as of same date.

133.    This Court should also direct the Property Appraiser to reimburse
        Plaintiff for all overpayments stemming from its improper calculation
        of the Assessed Value of Plaintiff's new homestead property.

134.    Plaintiff has incurred attorney's fees in bringing this action and is
        entitled to be compensated for his attorney's fees and costs.

        WHEREFORE, Plaintiff respectfully prays that this Court enter a declaration as
set forth above, award compensatory damages, and injunctive relief as well as attorney's
fees and costs and such other relief this Court deems just and proper.

## COUNT IV
## NEGLIGENCT MISREPRESENTATION

135.    Plaintiff realleges and incorporates by reference the allegations set forth
        above in lines 1 through 97 as though fully set forth herein.

136.    The Property Appraiser is charged under Florida law with determining
        the taxes to be assessed in Hillsborough County against real property
        situated within the County.

137.    Section 192.0105, Florida Statutes (2016), granted Plaintiff a statutory right to
        be informed during the tax collection process of the taxes due and estimated
        taxes as well as the application of homestead tax exemptions to the actual or
        proposed taxes.

138.    Thus, Florida law confers a special duty on the Property Appraiser to
        accurately inform a citizen, such as Plaintiff, of the taxes owed and
        estimated taxes.

139.    The Property Appraiser and his employees and agents negligently advised Plaintiff, improperly, that it would reassess the Market/Just Value of his prior homestead property as of January 1, 2017, in determining Plaintiff's SOH portability benefits.

140.    The Property Appraiser and his employees and agents knew or should have known that Plaintiff would rely on the Property Appraiser's representation.

141.    At the time the representations were made, the Property Appraiser and his employees and agents knew or should have known that the representation was false or inaccurate as the Property Appraiser did not intend to reassess the Market/Just Value of his prior homestead property as of January 1, 2017 for purposes of determining the SOH portability benefits due Plaintiff.

142.    As a result of the Property Appraiser's misrepresentation, Plaintiff has suffered actual and prospective damages.

143.    Plaintiff has incurred attorney's fees in bringing this action and is entitled to be compensated for his attorney's fees and costs.

WHEREFORE, Plaintiff respectfully prays that this Court grant him compensatory as well as attorney's fees and costs and such other relief this Court deems just and proper.

**COUNT V**
**GROSS NEGLIGENCE**

144.    Plaintiff realleges and incorporates by reference the allegations set forth in lines 1 through 97 and 98 through 143 as though fully set forth herein.

145.    The Property Appraiser is charged under Florida law with determining the taxes to be assessed in Hillsborough County against real property situated within the County.

146.    Section 192.0105(2)(a), Florida Statutes, granted Plaintiff a statutory right to an informal conference with the Property Appraiser to present facts to support changing a tax assessment and the right to file a petition to the Value Adjudgment Board to challenge a tax assessment.

147.    Thus, Florida law confers a special duty on the Property Appraiser to accurately inform  a citizen, such as Plaintiff, of his rights to challenge a tax assessment and to properly and timely submit petitions to the Value Adjustment Board upon notice that a citizen wishes to challenge a tax assessment.

148.    The Property Appraiser and his employees and agents failed to advise Plaintiff of his need to file a petition with the Value Adjustment Board prior to the September 13, 2016 deadline if he wished to challenge the 2016 Market/Just Value determining of his prior homestead property in that a below Market Value may have a negative impact on the amount of SOH benefits available for transfer should he proceed with the sale of his original homestead.

149.    The actions of the Property Appears and / or his staff constitute "Intentional Misconduct".

150.    According to the Florida Statutes, section 768.72(2)(a), "Intentional misconduct" means that the defendant had actual knowledge of the

wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage.

151.   In the alternative, the actions of the Property Appears and / or his staff constitute "Gross Negligence".

152.   According to the Florida Statutes, section 768.72(2)(b), "Gross negligence" means that the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.

153.   As a direct and proximate result of the Property Appraiser's breach of his duties, Plaintiff suffered actual and prospective damages.

154.   Plaintiff has incurred attorney's fees in bringing this action and is entitled to be compensated for his attorney's fees and costs.

(INTENTIONALLY LEFT BLANK)

**JURY TRIAL DEMANDED**

Plaintiff requests a jury trial as to all issues in this case.

This is the 27<u>th</u> day of Aug, 2020.

<u>/s/ Robert D. Evans</u>
Robert D. Evans

Respectfully submitted,

<u>/s/J. Benton Stewart, II</u>
J. Benton Stewart, II, Esquire
FL Bar No.: 0126969
Stewart Law, P.L.L.C.
11705 Boyette Road, Suite 205
Riverview Florida, 33569
Counsel for Plaintiff
Telephone: (813) 354-6446
bstewart@trialwork.net

**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**

<u>/s/ John A. Yanchunis</u>
John A. Yanchunis
Patrick A. Barthle
201 N. Franklin St., 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-2434
jyanchunis@forthepeople.com
pbarthle@forthepeople.com